UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA PADULA,

    Plaintiff,

v.                                      Case No: 2:16-cv-346-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION AND ORDER**

Before the Court is Plaintiff Linda Padula's Complaint (Doc. 1) filed on May 9, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**     **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**     **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On March 21, 2012, Plaintiff filed an application for disability insurance benefits ("DIB") and on April 5, 2012, Plaintiff filed an application for supplemental security income ("SSI"). (Tr. at 151, 152, 244-259). Plaintiff asserted an onset date of September 3, 2011. (*Id*. at 246, 250). Plaintiff's applications were denied initially on August 14, 2012, and on reconsideration on November 28, 2012. (*Id*. at 152, 152, 187, 188). A hearing was held before Administrative Law Judge ("ALJ") Maria C. Northington on March 10, 2014. (*Id*. at 75-124). The ALJ issued an unfavorable decision on October 3, 2014. (*Id*. at 29-41). The ALJ found Plaintiff not to be under a disability from September 3, 2011, through the date of the decision. (*Id*. at 29).

On March 10, 2016, the Appeals Council denied Plaintiff's request for review. (*Id*. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on May 9, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January

2

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2016. (Tr. at 31). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 3, 2011, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder; dependent personality disorder moderate; lumbar hypertrophy at L4/5 with alleged pain since 2009, but no stenosis and no impingement; and episodic cannabis use (20 C.F.R. § 1520(c) and 416.920(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (*Id.* at 33).

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work, with the following additional limitations:

> Specifically, the claimant is capable of performing a wide range of medium work that includes lifting and carrying up to 50 pounds occasionally and 25 pounds frequently as defined in Dictionary of Occupational Title (DOT) and the regulations. If someone can do medium work, it is opined that this person can also perform light and sedentary work that are inclusive within this exertional level.

---

1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

> There are no limits for sitting in an eight-hour workday with standing and/or walking for up to six hours in an eight-hour workday. The claimant is capable of occasionally climbing ramps and stairs, crouching, and stooping. She is to perform no crawling, no kneeling, and no climbing of ladders, ropes, or scaffolds. In the course of work, she is to have no exposure to extremes of hot, humidity, or cold temperatures. She is to perform no constant fine bilateral manipulations, but frequent fine manipulations remain intact. Secondary to mental impairments, the claimant retains the capacity to understand, remember and carry-out at least SVP 3-4 instructions and perform SVP 3-4 tasks as consistent with semi-skilled work. In the course of work and secondary to subjective allegations, she is to have no contact with the public, but incidental contact is acceptable.

(*Id*. at 34-35).

The ALJ determined that Plaintiff is unable to perform her past relevant work in retail sales, in management of an amusement park, and in risk management. (*Id.* at 39-40). In considering Plaintiff's age, education, work experience and RFC, the ALJ found that Plaintiff had acquired work skills from her past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (*Id.*). Relying on the vocational expert's opinion, the ALJ determined that Plaintiff was able to perform the following jobs: (1) file clerk, DOT # 206.387-034, light exertional level, SVP 3; (2) custodian, DOT # 381.687-014, medium exertional level, SVP 2; and (3) hand packer of medical supplies, DOT # 712.687-010, light exertional level, SVP 2.[2] (*Id.* at 40-41). Further, the ALJ determined that other jobs existed that Plaintiff could perform including a drier attendant, rack loader, and harvest worker of vegetable jobs. (*Id.* at 41). Thus, the ALJ found that the jobs listed range from unskilled to semi-skilled and from light to medium exertional levels, accommodating any limitation alleged by Plaintiff. (*Id.*). The ALJ concluded that Plaintiff was not under a disability from September 3, 2011, through the date of the decision. (*Id.* at 41).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises two issues. As stated by Plaintiff they are:

(1) The ALJ did not have good cause for rejecting Dr. Regala's Opinion.

(2) The credibility finding is not supported by substantial evidence.

(Doc. 20 at 13, 17). The Court addresses each argument in turn.

### A. Weight of Dr. Regala's Opinion

Plaintiff argues that the ALJ erred in failing to establish good cause for rejecting the opinion of Dr. Regala, Plaintiff's treating physician. (Doc. 20 at 13). Specifically, Plaintiff argues that Dr. Regala reported that Plaintiff could not perform manipulative activities with her right hand and could only occasionally use her left hand for work-related activities. (*See* Doc. 20 at 13). Contrary to Plaintiff's argument, however, the record reflects that Dr. Regala actually found that Plaintiff was able to "occasionally" perform work-related activities with her *right* hand and "never" with her *left*. (Tr. at 889). Thus, Plaintiff's argument appears to inadvertently mischaracterize Dr. Regalia's opinion concerning each hand. (*See* Doc. 20 at 13). The Court will, therefore, base its analysis of the issues presented on the record evidence of Dr. Regala's actual opinion (*see* Tr. at 889) rather than Plaintiff's apparent mischaracterization of it.

The record clearly shows that Dr. Regala opined that Plaintiff could not perform manipulative activities with her left hand and could only occasionally use her right hand for work-related activities. (*Id.*). Plaintiff argues that the ALJ overlooked significant evidence that supports Dr. Regala's opinion. (Doc. 20 at 14).

The Commissioner responds that the ALJ provided good reasons – supported by substantial evidence – to discount Dr. Regala's opinion. (Doc. 21 at 6). The Commissioner contends that Dr. Regala failed to support his opinion and Dr. Regala's own treatment notes also did not support his opinion. (*Id.* at 6-7).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity

6

of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit concluded that good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The ALJ considered Dr. Regala's treatment notes and his opinion. (*See* Tr. at 32, 36). The ALJ noted that Plaintiff's grip strength was normal bilaterally at 5/5. (*Id.* at 32). Further, the ALJ indicated that Plaintiff's EMG/Nerve Conduction Studies were normal. (*Id.*). The ALJ specifically cited to examinations performed by Dr. Regala where the doctor documented that Plaintiff had "full grip strength in the hands with a full range of motion, 5/5 strength in the upper extremities, intact sensation, no effusion, and no synovitis. EMG and nerve conduction studies of the hand are normal, Phalen's and Tinsel's tests are negative, and exams note good healing after a right carpal tunnel release." (*Id.* at 32, 36). The ALJ also noted that Plaintiff's hand numbness was being treated with injections. (*Id.*). The ALJ afforded little weight to Dr. Regala's opinion that Plaintiff is unable to perform any fine or gross manipulation of the left

hand and only occasional fine and gross manipulation with the right hand. (*Id.*). The ALJ compared and contrasted this opinion with Dr. Regala's treatment notes showing that that Plaintiff had normal 5/5 grip strength bilaterally and normal EMG findings. (*Id.*). The ALJ found that Dr. Regala's treatment notes do not support and are wholly inconsistent with his Medical Source Statement. (*Id.*). Further, the ALJ found Dr. Regala examinations showed Plaintiff had a normal gait, a negative straight leg raise and intact sensation. (*Id.*).

Plaintiff concedes that the ALJ's summary of Dr. Regala's treatment notes is correct, but argues that the ALJ ignored some more serious problems regarding Plaintiff's hands documented in Dr. Regala's notes. (Doc. 20 at 15). For example, Plaintiff asserts that Dr. Regala noted that Plaintiff's continued to experience numbness in her fingers following surgery. (*Id.*). Further, Plaintiff claims that in January 2013, Plaintiff was unable to make a fist and had diminished sensation in her thumb. (*Id.*). Plaintiff asserts that in her most recent visit to Dr. Regala, Plaintiff was instructed to wear braces for both wrists and, even though she had a full range of motion, she experienced tenderness in her PIP joints and grinding in her CMC joints. (*Id.*). Plaintiff claims that these findings suggest that it was painful for Plaintiff to move her fingers and/or to grip objects. (*Id.*). Plaintiff argues that based on these findings it is reasonable for Dr. Regala to conclude that Plaintiff has significant limitations in using her hands for work-related activities. (*Id.*).

The Commissioner responds that in Dr. Regala's Medical Source Statement, the doctor circled the limitations and provided no support for his conclusions. (Doc. 21 at 6). Further, the Commissioner asserts that the ALJ considered Plaintiff's medical records as a whole including those of Dr. Regala and the medical evidence does not support Dr. Regala's opinion as to Plaintiff's hand manipulation limitations. (*Id.* at 6-8).

The Court has reviewed both Dr. Regala's Medical Source Statement and his treatment notes. (Tr. at 625-29, 889-90, 891-927). In the majority of Dr. Regala's treatment notes, Plaintiff is noted as having a full grip strength bilaterally in both hands, and full range of motion. (*See, e.g.*, *id.* at 626, 892, 894, 897, 899, 922). Yet, Dr. Regala concluded that Plaintiff could only occasionally perform fine manipulations and gross manipulation with her right hand and never with her left hand. (*Id.* at 889). Further, Dr. Regala found that Plaintiff lacked the ability to perform fine and gross movements to prepare a simple meal, to care for personal hygiene, and to sort and handle files or papers. (*Id.*). In this same Medical Source Statement, Dr. Regala failed to cite to or support these serious limitations with an explanation or a citation to other records. (*See id.*). The Court finds Dr. Regala's opinion to be conclusory and inconsistent with his own treatment records. *See Phillips*, 357 F.3d at 1240. The Court further finds that the ALJ carefully considered Dr. Regala's treatment notes as well as his opinion and did not ignore Plaintiff's complaints of hand-numbness, but noted that Plaintiff received treatment for the numbness with injections. (Tr. at 32, 36). Additionally, the Court notes that the ALJ did include accommodations in the RFC as to Plaintiff's hands by limiting Plaintiff to performing frequent fine manipulations. (*Id.* at 34). Based upon the ALJ's consideration of Dr. Regala's treatment notes and opinion in conjunction with the evidence of record, the Court finds that the ALJ did not err in affording little weight to the opinion of Dr. Regala concerning Plaintiff's manipulation limitations in her hands. The Court further finds that that ALJ's decision was supported by substantial evidence as to this issue.

### B. Credibility

Plaintiff argues that the ALJ failed to evaluate properly Plaintiff's allegations of pain. (Doc. 20 at 17). Plaintiff acknowledges that the ALJ discussed various reasons for finding Plaintiff

9

not credible, but claims that the ALJ's reasons are unsupported or insufficient. (*Id.* at 17-19). Further, Plaintiff claims that the ALJ gave little consideration to Plaintiff's activities of daily living, which support her claims of pain and limitations. (*Id.* at 19-20). The Commissioner responds that the ALJ properly considered Plaintiff's subjective complaints of disabling symptoms together with the record evidence in determining that Plaintiff's statements were not fully credible and in determining Plaintiff's RFC. (Doc. 21 at 9-10).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain[,] or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5)

treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). Although housework and light cooking are minimal daily activities and are not dispositive evidence of a claimant's ability to perform work, an ALJ may consider a claimant's daily activities in evaluating a claimant's credibility as to testimony regarding symptoms. *Vennette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998); *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i), (iv)).

Specifically, Plaintiff raises the following issues as to credibility: (1) the ALJ's comment on the lack of treating physicians' statements concerning Plaintiff's inability to work; (2) the ALJ's observation of Plaintiff at the hearing; (3) the ALJ's consideration of Plaintiff's daily activities; and (4) the ALJ's consideration of the medical evidence in general. The Court addresses each of these issues in turn.

### 1. The ALJ's Comment Regarding the Lack of Treating Physician's Statements on Plaintiff's Inability to Work

Plaintiff argues that one principal reason that the ALJ found Plaintiff not credible was that none of Plaintiff's treating physicians described her as physically or mentally unable to work. (Doc. 20 at 17). Plaintiff claims that this finding is wrong because, as discussed above, Dr. Regala found Plaintiff has significant limitations in manipulations regarding her hands. (*Id.* at 17-18). Plaintiff claims that Dr. Regala's limitations would "likely preclude" Plaintiff from performing work. (*Id.* at 18).

The Commissioner responds that the ALJ did not draw an improper inference from this statement, but merely summarized the evidence of record, including the opinion evidence, in finding that Dr. Regala's statement did not support Plaintiff's allegations of disabling limitations. (Doc. 21 at 11). Further, the Commissioner contends that even if substantial weight was

afforded to Dr. Regala's opinion, it is a stretch to determine that even with the limitations he proposed, there are no jobs in the national economy that Plaintiff is able to perform. (*Id.*).

In the decision, the ALJ stated that "[t]he undersigned notes that surgery is not recommended for the claimant's back, she consistently exhibits good strength and sensation, a normal gait, a negative straight leg raise, and she is never described as physically or mentally unable to work." (Tr. at 38). The Court finds persuasive the Commissioner's argument that the statement by the ALJ is a summary of the record evidence before the ALJ and the ALJ was not drawing any improper inferences with this statement. Further, as to Dr. Regala's opinion, the Court has determined *supra* that the ALJ's determination to afford Dr. Regala's opinion little weight was supported by substantial evidence. Moreover, the Court finds that even if Dr. Regala's opinion as to Plaintiff's limitations were to be given significant weight, Dr. Regala did not describe Plaintiff as being either physically or mentally unable to work. Rather, Dr. Regala found Plaintiff had hand manipulation limitations. (*See id.* at 889). Thus, the Court finds that the ALJ's statement that Plaintiff was "never described as physically or mentally unable to work" to be accurate and to be a summary of the evidence of record. (*Id.* at 38). The Court finds that the ALJ did not err as to this issue.

### 2. The ALJ's Observations of Plaintiff at Hearing

Plaintiff claims that the ALJ engaged in "sit and squirm" jurisprudence. (Doc. 20 at 19). Plaintiff asserts that the ALJ erred in finding Plaintiff's pain could not be as serious as Plaintiff alleged because at the hearing, the ALJ observed Plaintiff to be well-groomed, articulate, coherent, highly intelligent, and demonstrated good memory. (*Id.*). Plaintiff argues that a person's speech and eye-contact have no logical relationship to a person's level of pain. (*Id.*). The Commissioner argues that the ALJ is permitted to consider a claimant's appearance and

demeanor at a hearing. (Doc. 21 at 11). Moreover, the Commissioner contends that an ALJ may use his or her observations in assessing a claimant's credibility. (*Id.* at 11-12).

The concept of "sit and squirm" jurisprudence denotes that an ALJ's denial of a claim is based on the claimant's failure to exhibit certain traits that the ALJ has subjectively determined would exist if the claimant were truly disabled. *See Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *12 (N.D. Ala. Mar. 31, 2017) (citing *Freeman v. Schweiker*, 681 F.2d 727, at 731 (11th Cir. 1982)). Even though "sit and "squirm" jurisprudence is prohibited, an ALJ is permitted to consider a claimant's appearance and demeanor at a hearing. *Id.* (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985)); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded*, SSR 16-3p.

In the instant case, the ALJ stated the following in the decision:

> The undersigned notes that the claimant portrayed herself in discomfort and got up three times during the hearing. However, she presented as well groomed, articulate, coherent, highly intelligent, and demonstrated good memory. She utilized no assistive device for ambulation, despite her pain allegations, and she responded appropriately to all questions with maintenance of good eye contact.

(Tr. at 38). The ALJ permissibly observed Plaintiff's appearance and demeanor during the hearing and considered them as one factor in Plaintiff's credibility determination. The ALJ noted both Plaintiff's discomfort at the hearing as well as her ability to be articulate, coherent, and maintain good eye contact. (*Id.*). The Court finds Plaintiff's argument without merit that the ALJ engaged in "sit and squirm" jurisprudence. The Court further finds that the ALJ did not err in commenting on and considering Plaintiff's demeanor and appearance at the hearing.

### 3. The ALJ's Consideration of Plaintiff's Daily Activities

Plaintiff argues that the ALJ gave little consideration to Plaintiff's activities of daily living and her testimony as to these activities. (Doc. 20 at 19-20). The Commissioner argues that the ALJ properly considered Plaintiff's daily activities. (Doc. 21 at 12-13).

#### a. The ALJ's Consideration of Plaintiff's Activities of Daily Living

Plaintiff argues that the ALJ did not consider Plaintiff's activities that support her symptoms. (Doc. 20 at 19). For example, Plaintiff claims that the ALJ did not consider that Plaintiff could not perform chores because of her hand pain and relies on her husband to accomplish the chores. (*Id.* at 19-20). Further, Plaintiff claims that she spends her whole day either sleeping or watching television. (*Id.* at 20). Lastly, Plaintiff asserts that she has difficulty taking out the trash unless her husband is with her. (*Id.*).

Here, the ALJ considered Plaintiff's activities of daily living. (Tr. at 35-36). Specifically, the ALJ noted that Plaintiff slept or watched television most of the day. (*Id.* at 35). Further, the ALJ noted that Plaintiff's mother and husband handle the chores. (*Id.*). After considering these activities along with the other evidence of record, the ALJ determined that Plaintiff's subjective complaints of pain were not fully credible because they were inconsistent with the objective medical findings. (*Id.* at 39). The ALJ did find that Plaintiff's subjective complaints "may have some merit," but the totality of the supporting medical evidence does not "provide clinical correlation of her symptomology of the degree of debility alleged with objective findings on examination." (*Id.*). The Court finds that the ALJ's consideration of Plaintiff's activities of daily living to be supported by substantial evidence.

### b. The ALJ's Consideration of Plaintiff's Social Activities

Plaintiff also argues that the ALJ erred in finding that Plaintiff had a greater level of ability because she was able to meet, date, and marry her husband during the time period under consideration. (Doc. 20 at 20). Plaintiff claims that she began dating her husband in 2010, prior to her alleged onset date. (*Id.*). The Commissioner responds that the ALJ properly considered the contrast between Plaintiff's testimony that she had low self-esteem and few social activities, with Plaintiff meeting, dating, and eventually marrying her spouse in February 2014. (Doc. 21 at 12). Further, the Commissioner asserts that the ALJ accommodated some social limitations by restricting the RFC to work involving only incidental contact with the public. (*Id.* at 12-13).

The ALJ considered Plaintiff's subjective testimony of low self-esteem and also properly considered Plaintiff's ability to date and marry her spouse during the time period when she contended she had low self-esteem. (Tr. at 32, 39). Even if the ALJ mistakenly thought Plaintiff met her spouse during the relevant time period, the ALJ was well within her authority to consider Plaintiff's activities of daily living, which included her marrying her husband during the relevant time period. Therefore, the Court finds that if the ALJ erred in determining Plaintiff met her husband during the relevant time period, the error was harmless. *See Pichette v. Barnhart*, 185 F. App'x 855, 856 (11th Cir. 2006) (finding that a remand is not warranted when an ALJ commits harmless error). Moreover, the ALJ restricted Plaintiff's RFC to jobs in which she would have no contact with the public, but incidental contact was acceptable. (Tr. at 34-35). The Court finds that the ALJ did not err in considering Plaintiff's social activities, including her dating and marrying her husband during the relevant time period to determine Plaintiff's abilities and credibility.

c. **MBA Program**

Plaintiff argues that the ALJ erred in noting that Plaintiff went back to school to earn her Master's in Business Administration when the record actually shows that Plaintiff began this program prior to her alleged onset date. (Doc. 20 at 20). Plaintiff states that she failed her last two classes in the fall of 2011, around the time of her alleged onset date and she withdrew from the program due to her disabilities. (*Id.*). Plaintiff contends that her inability to complete the program suggests that her pain and mental impairments are quite severe. (*Id.* at 20-21). The Commissioner responds that Plaintiff began the MBA program in the fall of 2010, after she had already filed a previous application for disability benefits that was denied. (Doc. 21 at 13). The Commissioner claims that Plaintiff started the program in the hopes that a second Master's Degree would open up the job market for her. (*Id.*).

In the decision, the ALJ noted that Plaintiff began a Master's Degree Program well after her alleged onset date and did well academically despite having no income. (Tr. at 39). Further, the ALJ posited, "[w]hy does someone incur such an educational financial burden if one is in poor physical and mental health? It just makes no rationale [sic] correlation to her allegations. It is clear that the claimant is much more functional both physically and mentally than she portrays herself to be." (*Id.*). At the hearing, Plaintiff testified that she wanted to go back to school to get an MBA to "open up the job market because I wasn't having much luck" finding a job. (Tr. at 86). Plaintiff testified that she eventually dropped classes because she could not focus and could not type her assignments. (*Id.*).

Even though Plaintiff disagrees with the ALJ's reasoning, the ALJ is permitted to consider Plaintiff's activities of daily living, which included Plaintiff going back to school to obtain an MBA. *See Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x at 871. Accordingly, the

Court finds that the ALJ did not err in considering Plaintiff's return to school to obtain an MBA in conjunction with all of the evidence of record to make a determination as to Plaintiff's credibility.

### 4. The ALJ's Consideration of the Medical Evidence in General

Finally, Plaintiff summarily argues that the ALJ's discussion of the medical evidence "left much to be desired." (Doc. 20 at 21). Plaintiff concedes that some of the treatment notes support the ALJ's findings, but other records show that Plaintiff had tenderness in her PIP joints and grinding in her CMC joints. (*Id.*). Plaintiff also states that she received prescription medication for her pain and epidural injections. (*Id.*). She asserts that she was unable to perform physical therapy and attempted suicide three times and suffers from serious depression and considerable anxiety. (*Id.*). Plaintiff claims that the decision "narrowly focuses on some negative evidence, but does not address other treatment notes that support Padula's testimony." (*Id.*). Plaintiff concludes that the decision is not supported by substantial evidence. (*Id.* at 22).

Here, the ALJ thoroughly reviewed the medical evidence of record. (Tr. at 32-39). The ALJ considered not only the medical evidence, but also Plaintiff's subjective complaints. (*Id.*). The ALJ credited certain evidence even though it conflicted with other evidence in the record and supported her decision with citations to the evidence of record. (*Id.*). When choosing between conflicting evidence, an ALJ is particularly suited as the fact finder and his or her decision will not be disturbed on appeal if supported by substantial evidence. *Cline v. Astrue*, 319 F. App'x 772, 774 (11th Cir. 2009) (citation omitted). The Court finds that the ALJ considered the evidence of record in making her decision, and the ALJ's decision is supported by substantial evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 7, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties